**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1414-WJM-MEH

OAKLEY, INC.,

    Plaintiff,

v.

MARIA FRANCISCA LY,

    Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

This matter is before the Court on Plaintiff Oakley, Inc.'s ("Oakley") Motion for Default Judgment ("Motion") (ECF No. 22) against Defendant Maria Francisca Ly. For the following reasons, the Motion is granted.

### I. BACKGROUND

This trademark infringement action arises out of Ly's allegedly unauthorized use of Oakley's logo on sunglasses that she markets and sells at her places of business. (ECF No. 1.) Specifically, Oakley alleges that Ly intended to lead consumers to believe that her counterfeit products were Oakley brand. (*Id.* ¶¶ 28–32.)

Oakley is a manufacturer, distributor, and retailer of eyewear, apparel, footwear, outerwear, and accessories. (*Id.* ¶ 6.) It holds several United States Federal Trademark Registrations which it affixes to various products that it carries. (*Id.* ¶ 10; ECF No. 22-1 at 12–19.)

Ly operates two retail jewelry and accessory stores in Colorado. (ECF No. 1 ¶ 5.) On April 10, 2020, an investigator employed by Oakley visited Ly's store location at the Plaza Latina Mall in Denver and observed sunglasses bearing Oakley trademarks. (*Id.* ¶ 16.) The investigator purchased a pair of the sunglasses for $60. (*Id.* ¶ 17.) On April 11, 2020, the investigator visited Ly's second retail location in Thornton, Colorado, and observed sunglasses with Oakley's trademarks for sale there as well. (*Id.* ¶ 18.) He purchased a pair for $80. (*Id.* ¶ 19.) Thereafter, Oakley inspected the two products and determined that they were counterfeit. (*Id.* ¶¶ 20–21.)

Oakley initiated this action on May 18, 2020. (*Id.*) It brings a claim for trademark counterfeiting in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* (*Id.*) Oakley served Ly with process on May 20, 2020. (ECF No. 11.)

After Ly failed to appear or otherwise defend this action, Oakley obtained the Clerk's Entry of Default on July 2, 2020. (ECF No. 19.) Oakley filed its Motion on November 4, 2020. (ECF No. 22.) Oakley seeks a permanent injunction prohibiting Ly's further infringement on its trademarks, and statutory damages totaling $600,000. (*Id.* at 10.)

## II. LEGAL STANDARD

Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party," in order to avoid further delay and uncertainty as to the diligent

party's rights.  *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

### III. ANALYSIS

Before granting a motion for default judgment, the Court must ensure that it has subject-matter jurisdiction over the action and personal jurisdiction over the defaulting defendant.  *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986).  Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant.  *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.").

**A.    Jurisdiction**

The Court finds it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Oakley's trademark claim arises under federal law.  (ECF No. 1.)

Oakley alleges that Ly is a resident of Adams County, Colorado.  (*Id.* ¶ 5.) Additionally, Oakley properly served Ly in Colorado.  (ECF No. 11.)  Accordingly, the Court properly exercises personal jurisdiction over Ly.  *See Dallas Buyers Club, LLC v. Cordova*, 81 F. Supp. 3d 1025, 1032 (D. Colo. 2015).

**B.    Trademark Counterfeiting Liability**

The Lanham Act defines a counterfeit mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  To prevail on a counterfeiting claim under the Lanham Act, a plaintiff must show that: (1)

the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116.  *See Otter Prods., LLC v. Fisch Enter., Inc.*, 2019 WL 7290937, at *4 (D. Colo. Oct. 3, 2019).  Section 1114 prohibits the unauthorized use "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive."

First, Oakley attaches photographs of the infringing products to its Complaint as well as scans of its registered trademarks to its Motion.  (ECF No. 1 at 5–7; ECF No. 22-1 at 12–17.)  Comparing images of Oakley's registered trademarks to the allegedly infringing products, the marks appear virtually identical.  (ECF No. 1 at 5–7; ECF No. 22-1 at 12–17.)  Considering the similarity of the marks and given that the infringing logo involved the same class of products—namely, sunglasses—Oakley has established that Ly infringed on its trademark and satisfied the first prong of the analysis.  *See Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) (finding counterfeiting where defendant purchased bags bearing plaintiff's mark and used them to package its own potatoes after its license to use the mark had expired).

Second, a court may infer that infringement is willful based on a defendant's failure to respond or otherwise defend an action.  *See Salba Corp. v. X Factor Holdings, LLC*, 2015 WL 5676690, at *2 (D. Colo. Sept. 28, 2015) (granting default judgment in trademark case and reasoning that the defendant had admitted by its default that its infringement was willful).  Further, "[t]he similarity between two marks is an important

factor in trademark infringement analysis because one's adoption of a mark similar to a preexisting mark not only bears independently upon the likelihood of confusion, but also may support an inference that one intended to draw upon the reputation of the preexisting mark." *Vail Assocs., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 869 (10th Cir. 2008). Based on Ly's failure to defend this action, and the identical appearance of the marks, the Court is satisfied that the infringement was intentional. Accordingly, Oakley has established Ly's liability for violation of the Lanham Act and the Court will enter judgment in favor of Oakley on its trademark counterfeiting claim.

**C.   Relief**

   i.   *Permanent Injunction*

The Lanham Act authorizes a court "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . ." 15 U.S.C. § 1116(a). Injunctive relief is "the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

In determining whether to grant injunctive relief, a court considers: (1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring Plaintiff; and (4) whether an injunction will advance the public interest. *Otter Prods.*, 2019 WL 7290937, at *7.

First, as discussed, Oakley's well-pleaded allegations, deemed admitted by Ly, establish that Ly intentionally infringed on its trademarked property; Oakley has therefore succeeded on the merits of its counterfeiting claim. Moreover, courts will

presume the likelihood of irreparable injury, a balance of hardships favoring the plaintiff, and advancement of the public interest where well-pled allegations establish liability for trademark infringement.  *See QFA Royalties LLC v. Kanya Enters. Inc.*, 2011 WL 744926, at *1–2 (D. Colo. Feb. 24, 2011) (issuing permanent injunction against defaulting party in breach of franchise agreement action); *Salba*, 2015 WL 5676690, at *2 (issuing permanent injunction in trademark counterfeiting action); *Big O Tires, LLC v. Wilke*, 2010 WL 1258056, at *2 (D. Colo. Mar. 23, 2010) (same).  Accordingly, the Court finds that an injunction is appropriate to prevent Ly's further infringing activities from undermining Oakley's brand reputation and creating confusion.

      ii.    *Statutory Damages*

The Lanham Act authorizes damages under statute in the amount of not less than $1,000 and not more than $200,000 per counterfeited mark per type of good.  15 U.S.C. § 1117(c)(1).  Oakley contends that Ly is liable for the counterfeiting of six trademarks on a per mark per type of good basis.  Specifically, Oakley identifies two pairs of sunglasses that its investigator purchased, four marks used across the two pairs, and three types of goods per pair: frames, lenses, and tags.  (ECF No. 22-1 at 7.)

The Court is dubious that a single pair of glasses constitutes three separate types of goods due to its components, and Oakley cites no authority supporting its argument on this point.  The Court therefore concludes that a pair of sunglasses constitutes a single type of good.  *Chanel, Inc. v. Pu*, 2009 WL 722050, at *9–10 (D. Kan. Mar. 18, 2009) (identifying handbags, wallets, key chains and eyeglass frames as four types of goods and awarding $7500 per trademark counterfeited); *see also Villanueva v. Acct. Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1075 (D. Colo. 2015)

("Although upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered ordinarily is not." (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983))).

Oakley further fails to provide a basis for requesting $100,000 for each counterfeited mark. The Court finds that in the circumstances of this case an award of $100,000 per counterfeited mark would be wildly excessive, and that $5,000 per counterfeited mark more appropriately represents the damage to Oakley. The Court finds that this reduced amount will also adequately deter Ly's further infringement, particularly considering the imposition of the permanent injunction in addition to such damages. Oakley is therefore awarded $20,000 in statutory damages, representing $5,000 per counterfeited mark per type of good.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Motion (ECF No. 22) is GRANTED;

2. The Clerk shall enter judgment in favor of Plaintiff Oakley and against Defendant Ly in the amount of $20,000;

3. Ly is PERMANENTLY ENJOINED from:

    a. Manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear the Oakley trademarks, or any other mark or design element substantially similar or confusing thereto; or

      b.      Engaging in any other activity constituting unfair competition with Oakley, or acts and practices that deceive consumers, the public, and/or trade, including without limitation the use of designations and design elements associated with Oakley;

4. The Clerk shall terminate this case; and

5. Oakley shall have its costs upon the filing of a bill of costs in accordance with the procedures under Federal Rule of Civil Procedure 54(d) and District of Colorado Local Civil Rule 54.1.

Entered at Denver, Colorado this 29th day of July, 2021 at 12:15 p.m. Mountain Daylight Time.

BY THE COURT:

_____
William J. Martinez
United States District Judge